UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JUNE B.,                                          :
            Plaintiff,                            :
                                                 :
            v.                                   :        C.A. No. 24-245-MRD
                                                 :
FRANK BISIGNANO,                                 :
Commissioner of the Social Security              :
Administration,                                  :
            Defendant.                           :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On May 26, 2022, Plaintiff June B., a fifty-one-year-old high school graduate with a certified nursing assistant certificate, applied for Disability Insurance Benefits ("DIB") under the Social Security Act.  Tr. 23-33-34.  Plaintiff had worked for many years in retail stores and more recently as a personal care attendant, until February 14, 2022,[1] her alleged onset of disability date.  Tr. 23, 33, 229.  She will be insured through December 31, 2027.  Tr. 24.

As relevant to what has been presented to the Court, at Step Two, regarding Plaintiff's physical claims, an administrative law judge ("ALJ") agreed that, during the period in issue beginning on the alleged onset date, Plaintiff had suffered from severe bilateral upper extremity carpal tunnel syndrome ("CTS"), bilateral lower extremity and upper extremity neuropathy, lumbar and cervical degenerative disc disease and obesity, but that her migraines were non-severe.  Tr. 26.  Also at Step Two, regarding Plaintiff's mental health claims (depression and

---

[1] In late 2022, during the period in issue, Plaintiff had what the ALJ found to be one unsuccessful work attempt.  Tr. 25-26.  The record includes a letter from this employer confirming that Plaintiff's resignation was accepted "with deep regret" due to her inconsistency in maintaining a work schedule attributable to "circumstances outside of [her] control."  Tr. 334.  The ALJ has not relied on this period of working as evidence that Plaintiff is able to work.  See id.  As noted infra, there is substantial evidence corroborating Plaintiff's report that "she had to stop working due to her conditions," which supports the proposition that this work effort was sincere and failed because of Plaintiff's symptoms, particularly pain.  Tr. 26.

anxiety), the ALJ found her impairments to be non-severe in reliance on an array of evidence including his lay assessment that post-file review mental health treatment was "sparse," and Plaintiff's mental status examinations were normal.[2] Id.  At the RFC[3] phase of the analysis, the ALJ confirmed this mental health finding, corroborated by what he found to be the persuasive prior administrative findings of the non-examining psychiatrist (Dr. Susan Killenberg) and psychologist (Dr. Ryan Haggarty) that Plaintiff's symptoms cause no more than mild limits and rejecting as not persuasive the opinion in the examination report of the consulting psychologist, Dr. Louis Cerbo, that Plaintiff's task persistence is adversely impacted by low frustration tolerance and that she will socially isolate when frustrated.  Tr. 29, 33.

Regarding Plaintiff's RFC, the non-examining expert physicians (Drs. Elaine Hom and Benjamin Weinberg) reviewed a portion of this medically complex treating record, together with the other evidence of record submitted as of the date of their review, to find inter alia that Plaintiff's exertional ability is limited to standing/walking no more than four hours in a workday (permitting less than light exertional work) and that Plaintiff's ability to manipulate on the right side is limited to no more than occasional handling.  Tr. 32.  In establishing the RFC, the ALJ rejected these findings as unpersuasive, substituting his own determinations (based on his own analysis of the medical and other evidence) that Plaintiff can stand/walk up to six hours (permitting light exertional work), and that she can frequently do handling with both upper extremities.  See Tr. 29, 32.  Based on these findings, and in partial reliance on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff is not disabled.  Tr. 34-35.  The VE's

---

[2] The mental status examination or "MSE" is an objective clinical assessment of an individual's mental ability, based on a health professional's observations.  Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022), adopted by text order (D.R.I. Mar. 32, 2022).

[3] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

testimony – that fewer than 24,000 jobs would be available nationally to a person with Plaintiff's limits as found by the ALJ – confirms that the ALJ's less-limited RFC is on the cusp of disability.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner denying her DIB application.  ECF No. 10.  In the motion, Plaintiff contends that the ALJ's RFC is tainted by error because (1) the ALJ's determination that Plaintiff is less limited than both non-examining expert physicians found is based on an improper lay interpretation of complex medical evidence that he is not legally qualified to make; and (2) the ALJ's assessment of Plaintiff's subjective statements as less than credible clashes with the requirements of Sacilowski v. Saul, 959 F.3d 431 (1st Cir. 2020).  ECF No. 10.  Plaintiff also challenges the ALJ's Step Two determinations that: (1) Plaintiff's migraines are not a severe impairment despite a diagnosis based on clinical findings and ongoing treatment with medication prescribed by the neurology provider and then by an otolaryngologist (Dr. Frederick Godley) who noted that the migraine symptom of light sensitivity potentially impacts the ability to work (and adjusted medication in response); and (2) depression and anxiety are not severe despite Dr. Cerbo's opinion of adverse impact on task persistence and Plaintiff's treatment not just with medication and but also with bi-weekly therapy sessions at which her mental status was generally observed to be somewhat abnormal.  Id.  Based on these errors, Plaintiff asks the Court to remand the matter for an award of benefits or, alternatively, for further proceedings.  Id.  Defendant has filed a counter motion for an order affirming the Commissioner's decision.  ECF No. 12.

Both motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

I.    **Background**

This case presents the Court with a medically complex treating record and subjective claims of debilitating pain in a record that more than doubled in size after the non-examining file review was complete.

In the portion of the file seen by the non-examining experts, Plaintiff was treated by her primary care providers and an array of specialists (neurologists, orthopedists, including an orthopedic surgeon, and an otolaryngologist) for clinically confirmed cervical ("tiny" central disc protrusion) and lumbar (multilevel spondylosis) spine impairments, neuropathy, spasms, tenderness, bilateral CTS (with surgery on the left side and recommended for the right side), and migraine/headache, coupled with complaints of severe pain, numbness and tingling, difficulty walking, including stumbling, tripping and occasionally falling (confirmed by observed bruising), moderate to severe headaches with photo and related migraine phenomena, and daily and constant hand pain with difficulty grasping especially on the right side.  See generally Tr. 394-98, 495-99.  These records contain a complex mix of both normal and abnormal physical observations and clinical findings.  See, e.g., Tr. 372 (orthopedic surgeon records upper extremity observations of bilateral tenderness and pain, "Valgus instability," positive Phalen and Tinel signs on the right side, but normal strength, sensation and reflexes, and "improving" on the left due to surgery); Tr. 394-98 (neurology provider records observations of abnormal EMG of upper extremities, abnormal MRI of lumbar and cervical spine, but no apparent distress; medication for headaches increased); Tr. 495-99 (primary care provider records many clinically diagnosed problems and notes "c/o debilitating symptoms, neck pains, back pain, left leg numbness and pain," but "not sure what is causing various pains where [Plaintiff] feels she cannot work").  From a mental health perspective, these records reflect the primary care

provider's diagnosis of anxiety and depressive disorders, which were treated with medication, but not by a specialist.  E.g., Tr. 490-99.

Based on these records, the non-examining physician experts (Drs. Hom and Weinberg) noted the complaint of headache but did not make any findings regarding headache or migraine. Nevertheless, deploying their expertise (both in interpreting medical records and in applying Social Security concepts), both Drs. Hom and Weinberg found that Plaintiff is limited to four hours of standing/walking (supported by the evidence of Plaintiff's paresthesia in the lower extremities and poor balance) and only occasional handling on the right (supported by Plaintiff's right-side CTS).  Tr. 87-88, 97-99.  Based on their review of these records, the non-examining mental health experts (Drs. Killenberg and Haggarty) found that Plaintiff's depression and anxiety causes no more than mild limitations and are non-severe impairments.  Tr. 84-86, 94-96.

Post file review, in addition to significant ongoing treating with the orthopedist and neurologists (including many injections and a radio-frequency ablation to address pain with limited success),[4] Tr. 579-673, the record expanded[5] to include records from a chiropractor, who made numerous abnormal observations, including abnormal gait with antalgic forward walk, stiffness, spasm, tenderness/pain and hypertonicity.  Tr. 548-78.  The post-file-review record also includes physical therapy records that reflect the therapist's objective observations of Plaintiff's limited range of motion, strength limitations, including decreased right side grip strength, and seriously abnormal gait.  Tr. 703-54; see Tr. 703-04 (patient "reports dropping items from her

---

[4] These post-file-review records include several references confirming Plaintiff's claim during the ALJ hearing that, notwithstanding the surgeon's notes indicating that her CTS improved on the left with surgery, the surgery did not relieve the left-side symptoms resulting in Plaintiff's decision not to subject herself to such surgery on the right. See, e.g., Tr. 602 (neurologist notes that surgery on left elbow and wrist "didn't help her left-hand symptoms so she didn't go for surgery on the right arm").

[5] The post-file-review record has more material (271 pages) than appears in the portion of the record that was seen by the non-examining experts (204 pages).  This remains true even after duplicative records in the post-file-review portion are ignored.

right hand frequently" and "numbness and tingling in bilateral lower extremities with frequent catching of feet"); Tr. 726, 728 (while walking from room to room, "[d]uring turns or quick adjustments to navigate obstacles, there is minimal neck movement in any plane and entire trunk and body moves in unison with a guarded appearance").

The post-file-review record further reflects that Plaintiff initiated mental health treatment with a licensed social worker who saw her biweekly and whose MSE observations consistently include abnormal findings.  Tr. 675-96; e.g., Tr. 691-92 (MSE observations include soft speech, depressed, sad emotional state and flat affect).  And the post-file-review record contains new information regarding migraines/headaches, including the opinion of the otolaryngologist (Dr. Frederick Godley) that Plaintiff's abnormal clinical test results confirmed neural "hallucinations" and light sensitivity associated with chronic migraines.  Tr. 793-96.  Although Dr. Godley noted that the symptoms are not dangerous but annoying, he recorded Plaintiff's report that the light sensitivity impacted her at work.  Id.  Dr. Godley also noted that the medication Plaintiff was taking for migraines was not adequately managing her symptoms; he prescribed sumatriptan.  Tr. 795.  Several of these post-file-review providers noted Plaintiff's struggle in late 2022 to return to work, including her desire to succeed and that her symptoms caused this work attempt to fail in early 2023.  E.g., Tr. 575, 577, 678-92, 795; see Tr. 678 ("starting her new job . . . reports some difficulties adjusting to the job including challenges with travel, physical pain"); Tr. 679 ("ongoing distress . . . due to physical pain, difficulties with work"); Tr. 685 ("increased stress at this time due to work and physical pain. . . . reports feeling that she is in too much pain to complete physical work, but reports needing income"); Tr. 795 (light sensitivity associated with migraine "making it harder to work").

The ALJ performed his own lay review of this medically complex record. Focusing on the many normal observations[6] throughout the entirety of the record (both pre- and post-file review) and discounting Plaintiff's consistent subjective statements (both to treating sources and in support of her application) about the impact of her symptoms, he determined that the Hom/Weinberg findings of four-hour stand/walk limits and manipulative limits to occasional handling on the right side are unpersuasive. The ALJ's rejection of these experts' finding is based, for example, on his difficult-to-understand[7] conclusion that the physical therapy records "support no greater than a frequent handing limitation." Tr. 32. Importantly, it appears that acceptance of these non-examining expert findings would likely have yielded the determination that Plaintiff's limits are disabling.[8] See Tr. 72-76 (VE testifies that there is limited light work

---

[6] Plaintiff suggests that the ALJ's analysis is based on cherry-picking of a mixed record to focus only on the normal findings. I agree. To illustrate, the ALJ relies on the finding of normal gait in the neurologist's records, Tr. 32 (referencing Tr. 538), but ignores the physical therapist's repeated and dramatic observation of seriously abnormal gait. Tr. 728; see also Tr. 549 (chiropractor observes abnormal gait).

[7] It is unclear what the ALJ found in the post-file-review exhibit he cites to support this finding. Having scoured the entire exhibit myself, as a lay reader, I found that these physical therapy records appear to confirm the correctness of the right-side manipulative limit (occasional) found by both Drs. Hom and Weinberg. See, e.g., Tr. 705-06 (measurement of grip/strength, decreased grip strength on right); Tr. 742 ("dropping items when attempting to grasp/grip with [right] hand"). To me, they do not appear to afford any support for the conclusion that the ALJ drew from them – that Plaintiff's ability to handle on the right is less limited than was found by Drs. Hom and Weinberg. However, neither I – nor the ALJ – is medically qualified to make this judgment.

[8] The Commissioner alternatively argues that, if the ALJ erred in adopting a six-hour stand/walk limit instead of a four-hour limit, the error is nevertheless harmless. To support this argument, he points out (correctly) that a four-hour limit on the ability to stand/walk falls between light (generally no more than six hours of stand/walk) and sedentary (generally no more than two hours of stand/walk). He relies on a decision where an ALJ found available work at the light exertional level for a claimant with an RFC limit of only four hours of standing/walking. See O'Bannon v. Colvin, Civil No. 1:13-cv-207-DBH, 2014 WL 1767128, at *1, *8-9 (D. Me. Apr. 29, 2014). The problem is that in O'Bannon, that ALJ specified in the hypothetical that the VE was to testify only regarding jobs suitable for someone able to stand/walk for no more than four hours, which is less than light work. Id. at *9 (where four-hour limitation was included in hypothetical question posed to VE, ALJ was entitled to rely on her response). By contrast, in this case, the ALJ did not frame his hypothetical with such a specific limitation. Rather, he asked about persons able to do light work; that means that the VE's response is based on work requiring the ability to stand/walk for six hours. See Tr. 33-34. The Court cannot know whether the VE would have testified to a sufficient number of jobs to sustain the Commissioner's Step Five burden if the hypothetical had included the more specific stand/walk limitation (no more than four hours). Thus, if the ALJ's finding that Plaintiff can perform the full range of light exertional work is tainted by error because it is improperly based on a lay interpretation of complex medical information, I find that the error may well be material to the outcome.

and no sedentary work for person limited to only occasional handling). Further, the VE's testimony confirms that the ALJ's RFC is on the cusp of disability, in that the VE identified only 24,000 positions nationally at the full light exertional level, most of which (10,000 jobs) are as a school bus monitor. Because he was not asked, the VE did not testify whether there would be jobs available to a person able to do less than light work (that is, with a four-hour stand/walk limit) as long as the person is limited to occasional handling. Nor did the VE testify about what jobs would be available to a person limited to light, less than light or sedentary work but who is capable of frequent handling. As the decision explains, the ALJ did not conclude that Plaintiff could frequently do handling until after the hearing when he saw the post-hearing evidence. Tr. 34. Therefore, he did not propound a hypothetical that included that limitation.

## II.     <u>Standard of Review</u>[9]

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3); <u>see</u> <u>Purdy v. Berryhill</u>, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Id.</u> (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict"

---

[9] I do not accept Plaintiff's argument that cases establishing the standard of review applicable to Social Security appeals are no longer applicable in light of <u>Loper Bright Enters. v. Raimondo</u>, 603 U.S. 369 (2024). <u>Loper Bright</u> applies to cases that fall under the Administrative Procedures Act, while this case is governed by the Social Security Act. <u>Cameron B. v. Dudek</u>, C.A. No. 24-CV-00176-MSM-LDA, 2025 WL 1348550, at *1 (D.R.I. May 8, 2025). Further, <u>Loper Bright</u> itself specifies that, "we do not call into question prior cases that were decided by the <u>Chevron</u> framework." 603 U.S. at 412. Thus, "courts that have considered <u>Loper Bright</u> in the social security context have concluded that it does not change the landscape in these cases." <u>Wright v. Comm'r of Soc. Sec.</u>, No. 1:24-cv-226, 2025 WL 665137, at *2 n.1 (W.D. Mich. Mar. 3, 2025).

than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2020); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive. . . because the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." I.A. v. Comm'r of Soc. Sec. Admin., Civil Action No. 23-10170-FDS, 2024 WL 38746, at *4 (D. Mass. Jan. 3, 2024) (internal quotation marks and citation omitted), aff'd sub nom. Askew v. O'Malley, No. 24-1051, 2024 WL 4362258 (1st Cir. Sept. 23, 2024). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022). Remand is unnecessary if "all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled." Elizabeth V. v. O'Malley, C.A.

No. 23-00459-WES, 2024 WL 1460354, at *2 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024).

Because bare medical findings are unintelligible to a lay person in terms of residual functional capacity, an ALJ is not qualified to assess RFC based on a bare medical record. Rosado v. Sec. of Health & Hum. Servs., 807 F.2d 292, 293 (1st Cir. 1986). This principle does not preclude the ALJ from rendering commonsense judgments about functional capacity based on medical findings, as long as the decision does not overstep the bounds of a lay person's competence and render a medical judgment. Gordils v. Sec'y of Health & Hum. Servs., 921 F.2d 327, 329 (1st Cir. 1990); Ortiz v. Dudek,, Civil Action No. 24-CV-11704-ADB, 2025 WL 1400356, at *17 (D. Mass. May 14, 2025). Thus, if the only medical findings in the record suggest that a claimant exhibited little in the way of physical impairments, but nowhere in the record did any physician state in functional terms that the claimant had the exertional capacity to meet the requirements of sedentary work, the ALJ would be permitted to reach that functional conclusion himself. Godils, 921 F.2d at 329; Ortiz, 2025 WL 1400356, at *17.

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Sacilowski, 959 F.3d at 433, 440-41; Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021).

**III.    Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to DIB claims).

### B.    Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  A "medical opinion" is defined in the regulations as a statement that identifies specific functional "limitations or restrictions" "about what [claimants] can still do despite their impairments."  Id. § 404.1513(a)(2).  For purposes of documenting an impairment, a medical opinion must come from an "acceptable medical source," which includes a physician, a psychologist, a licensed advanced practice registered nurse or a licensed physician assistant opining within the scope of licensed practice.  Id. § 404.1502.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  Id. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024). Supportability includes an assessment of the medical evidence and how consistent the medical opinions or findings are with other evidence in the claim.  See Elizabeth V., 2024 WL 1460354, at *3.  Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5).  Any medical opinion "lacking adequate supporting evidence, or one that is inconsistent with evidence from other sources, is not persuasive regardless of who made the medical opinion." Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *2 (D.R.I. Aug. 1, 2022), adopted, 2022 WL 18910865 (D.R.I. Nov. 7, 2022).

In considering whether and to what extent to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so. See Smith v. Colvin, No. 2:14-cv-429-JHR, 2015 WL 4391420, at *5 (D. Me. July 15, 2015).

"[N]owhere in Social Security law does it say that an ALJ is *required* to tether a claimant's RFC to a specific medical opinion of record.  To the contrary, Congress bestowed upon the SSA, *not* the medical providers, the ability to make the RFC determination."  Claudio-Adorno v. Comm'r of Soc. Sec., Civ. No. 22-1604 (MDM), 2024 WL 1826608, at *4 (D.P.R. Feb. 8, 2024) (emphasis in original).  Nevertheless, if a portion of an expert opinion is rejected as less persuasive, the ALJ must state his reason, which must be based on substantial evidence of record.  See 20 C.F.R. § 404.1520c(b).  The ALJ's duty to "articulate how [she] considered the medical opinions and prior administrative findings" is not onerous.  Id. § 404. 1520c; see Warnell v. O'Malley, 97 F. 4th 1050, 1053 (7th Cir. 2024).  In assessing the ALJ's articulation, the Court must remain mindful that its role is not to reweigh the evidence, even if it might have come to a different conclusion.

Medical source findings/opinions may not constitute substantial evidence if rendered by a source who was not privy to evidence that would materially detract from the force of the findings.  Jonathan G. v. Kijakazi, C.A. No. 22-107MSM, 2022 WL 17580663, at *6 (D.R.I. Dec. 12, 2022), adopted, 2023 WL 4077849 (D.R.I. May 3, 2023).  In particular, an ALJ cannot rely on a medical expert's opinion if the expert did not see documents indicating that the claimant's condition is materially different from what the expert found based on what he did see.  Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018).  Thus, substantial evidence of material symptom worsening that the non-examining experts did not see requires remand.  Sandra C. v. Saul, C.A. No. 18-375JJM, 2019 WL 4127363, at *6 (D.R.I. Aug. 30, 2019), adopted by text order (D.R.I. Sept. 16, 2019).  If the "[c]ourt does not know whether the non-examining state agency physicians would have rendered the same . . . opinions if they had all of the medical evidence," remand is necessary.  Mary K v. Berryhill, 317

F. Supp. 3d 664, 668 (D.R.I. 2018); see Kayla G. v. Kijakazi, C.A. No. 21-443PAS, 2022 WL 3368600, at *2 (D.R.I. Aug. 16, 2022).

On the other hand, it is also well settled that an ALJ may rely on non-examining expert findings, despite post-file-review evidence, as long as the ALJ considers the post-file-review evidence and makes a commonsense finding that the pre-and post-file-review records are sufficiently similar that the post-file review material does not detract from the weight to be afforded to the expert findings. Jennifer F. v. Saul, C.A. No. 19-547MSM, 2020 WL 6488706, at *6-7 (D.R.I. Sept. 16, 2020), adopted, 2020 WL 6487813 (D.R.I. Nov. 4, 2020). To hold otherwise would render such opinions irrelevant because of the practical impossibility that such experts can be privy to updated medical records. See Sanford v. Astrue, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009). It is well settled that this approach "would defy logic and be a formula for paralysis." Id. That is, expert/medical opinions may not be rejected as stale unless the claimant sustains his burden of demonstrating that the post-file-review evidence reveals a "sustained (and material) worsening of the claimant's impairments" that the ALJ ignored. Jennifer F. v. Saul, C.A. No. 19-547MSM, 2020 WL 6488706, at *6 (D.R.I. Sept. 16, 2020) (internal quotation marks omitted), adopted, 2020 WL 6487813 (D.R.I. Nov. 4, 2020).

### C.    Claimant's Subjective Statements

Where an ALJ decides not to fully credit a claimant's subjective statements, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *3-4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for not crediting

subjective pain testimony requires that the testimony be accepted as true.  See Sacilowski, 959

F.3d at 441; McMahon v. Comm'r SSA, 583 F. App'x 886, 893 (11th Cir. 2014).  If proof of

disability is based on subjective evidence (like pain) and a credibility determination is, therefore,

critical to the decision, "the ALJ must either explicitly discredit such testimony or the

implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67

F.3d 1553, 1562 (11th Cir. 1995) (internal quotation marks omitted).  Guidance in evaluating the

claimant's statements regarding the intensity, persistence, and limiting effects of subjective

symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017).  It directs

the ALJ to consider the entire case record, including the objective medical evidence; an

individual's statements about the intensity, persistence, and limiting effects of symptoms;

statements and other information provided by medical sources and other persons; any other

relevant evidence; and whether statements about the intensity, persistence, and limiting effects of

symptoms are consistent with the medical signs and laboratory findings.  Id. at *49463-65; see

Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *5-6 (D.R.I. July 23,

2021), adopted by text order (D.R.I. Aug. 18, 2021).

### D.    Step Two Analysis

The disability analysis ends at Step Two if the claimant's medically determinable

impairments have not been "severe" for a consecutive twelve-month period.  20 C.F.R. §

404.1520(a)(4)(ii); see V. James F. v. Kijakazi, C.A. No. 22-230JJM, 2023 WL 3223790, at *2

(D.R.I. May 3, 2023), adopted by text order (D.R.I. July 6, 2023), aff'd, No. 23-1648 (1st Cir.

Aug. 8, 2024).  "An impairment . . . is not severe if it does not significantly limit [the claimant's]

. . . mental ability to do basic work activities."  20 C.F.R. § 404.1522(a).  Basic work activities

include "[u]nderstanding, carrying out, and remembering simple instructions . . . ; [u]se of

judgment . . . ; [r]esponding appropriately to supervision, co-workers and usual work situations; and . . . [d]ealing with changes in a routine work setting."  20 C.F.R. § 404.1522 (b)(3)-(6). Non-severity is found where the medical evidence establishes no more than a slight abnormality that would have only a minimal effect on an individual's ability to work.  SSR 85-28, 1985 WL 56856, at *2 (Jan. 1, 1985).  Step Two is a screening device used to eliminate applicants "whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment."  McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1122 (1st Cir. 1986); Burge v. Colvin, C.A. No. 15-279S, 2016 WL 8138980, at *7 (D.R.I. Dec. 7, 2016), adopted sub nom. Burge v. Berryhill, 2017 WL 435753 (D.R.I. Feb. 1, 2017).  At Step Two, Plaintiff has the burden to show that she had "medically determinable" physical or mental impairment(s) that significantly limited her ability to do basic work activities at the relevant time.  Luz R. v. Saul, C.A. No. 19-00307-WES, 2020 WL 1026815, at *6 (D.R.I. Mar. 3, 2020) (internal quotation marks omitted), adopted by text order (D.R.I. Mar. 30, 2020).

IV.    **Analysis and Recommendation**

   A.    **RFC Errors**

   I find that the ALJ's RFC determination is seriously flawed requiring a remand for reconsideration of the evidence and/or the taking of additional evidence.  Therefore, I recommend remand.  However, mindful of the many normal clinical findings on which the ALJ relies, I do not find that this is an unusual case where the proof is overwhelming, or that it is very strong and there is no contrary evidence.  See Leanne B. v. O'Malley, C.A. No. 23-100-MSM, 2024 WL 862280, at *8 n.9 (D.R.I. Feb. 29, 2024), adopted by text order (D.R.I. Mar. 25, 2024). Rather, this is a medically complex case with a mix of normal and abnormal findings.  Therefore, I do not recommend that the Court remand for an award of benefits.

The most serious error is the ALJ's reliance on his own "common sense" to reject the interpretation of the non-examining physician experts and instead to translate the complicated mix of normal and abnormal findings in this record into functional limitations.  While the Commissioner is certainly correct that an ALJ is not tethered to the consulting experts' medical findings and may rely on common sense to interpret medical records (or the lack of medical records) that are readily comprehensible to a lay person, this is not one of those cases.  See Rosado, 807 F.2d at 293.  That is, I find that the complexity of these records is a matter requiring professional expertise and that the ALJ overreached in relying on his lay judgment.  Further, having reviewed the entirety of the record, I find that the ALJ's RFC seems "out of whack" with the record, particularly with the post-file-review record and their mix of clinical observations, test results and provider responses to Plaintiff's subjective complaints, which appear to confirm the non-examining expert physicians' findings.  See Forbes v. Colvin, No. CA 14-249-M-PAS, 2015 WL 1571153, at *9 (D.R.I. Apr. 8, 2015) (internal quotation marks omitted).  Put differently, I find that this is not a case where the record contains "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's lay] conclusion."  Biestek, 587 U.S. at 103 (internal quotation marks omitted).

This error is exacerbated by the ALJ's error in improperly cherry-picking by focusing only on the normal findings.  To illustrate, the ALJ relies on the finding of normal gait in the neurologist's records, Tr. 32 (referencing Tr. 538), but ignores the physical therapist's repeated and dramatic observation of a seriously abnormal gait.  Tr. 726-28; see also Tr. 548-50 (chiropractor observes abnormal gait).  Similarly, the ALJ relies on "normal range of motion, sensation, and reflexes of the right upper extremity along with a normal gait and station," Tr. 32 (referencing Tr. 399-404), but ignores the clinical findings/observations/assessments in the same

record of the abnormal EMG confirming "bilateral distal median neuropathies consistent with bilateral [CTS]" and "[p]aresthesia . . . and pain in the BLE . . . with repeated falls." Tr. 403.

The ALJ's improper lay analysis of these medically complex records also taints the ALJ's rejection of Plaintiff's subjective statements, which he found to be inconsistent with his own lay interpretation of the medical and other evidence. For example, the ALJ relies on the contrast between Plaintiff's statement that she has difficulty walking and the observations of a nurse practitioner that she has normal gait but ignores this provider's observations of "paresthesia . . . and pain in the BLE," Tr. 399-404. The ALJ also ignores the observations of the chiropractor and the physical therapist of seriously abnormal gait, which are consistent with Plaintiff's subjective statements. Tr. 549-50, 706, 728; see Tr. 602-04 ("S[ensory]: [r]educed to light touch and temperature in both feet up to ankles"; neurologist assessed paresthesia with increased medication). That is, Plaintiff's subjective statements appear to be consistent with the findings of non-examining expert physicians, as well as with the post-file-review record, which adds the counseling notes that describe how Plaintiff's symptoms caused her late 2022 work attempt to fail. Therefore, I also recommend that remand include further analysis of these subjective statements, consistent with the standard set in Sacilowski, 959 F.3d at 441.

**B.    Step Two Errors**

I pause briefly to address Plaintiff's Step Two argument that the ALJ erred in failing to find that her migraines and mental health impairments are severe. As to each of these impairments, the record – particularly the post-file-review record – contains evidence that undermines the ALJ's findings that these impairments do not significantly impact Plaintiff's ability to do basic work.

Regarding migraines, the ALJ inaccurately posits that the record notes "[n]o limiting factors have been noted in regard to th[is] condition[] . . . and various treatment notes indicate that [this] condition[] [is] generally controlled." Tr. 26. This finding ignores the pre-file review records confirming a diagnosis of migraine/headache, which the non-examining physicians noted but did not include among the conditions they analyzed (Tr. 84, 94). E.g., Tr. 400 (noting migraine symptoms of headaches, "blocked" ears, photophobia, sonophobia, lightheadedness and white vision spots; medication started); Tr. 507 (noting headaches accompanied by light flashes). This finding also ignores that the post-file-review record materially detracts from the non-examining experts' implied finding in excluding migraine from the list of medically determinable impairments, in that it contains the specialist's opinion that prescribed medication was not controlling Plaintiff's migraines (resulting in a medication change) and noting a specific work-related impact from the light sensitivity caused by the migraines. Tr. 795; e.g., Tr. 596 (headache/migraine condition causes headaches that "last about 1-2 hours when they come," but also causes ear ringing, photophobia and sonophobia, with improvement following medication change to address symptoms). Nor did the ALJ consider the extensive evidence related to severity of the headaches. E.g., Tr. 400 (headaches impact entire head, occur daily, are moderate to severe and can last all day unless treated); Tr. 531 ("headaches are coming a couple of times per week lasting about an hour"). In light of this evidence, I recommend that the ALJ's finding that Plaintiff's headaches are so benign as to be deemed non-severe at Step Two should be reexamined on remand.

Similarly, regarding mental health, the ALJ relies for his Step Two finding on his interpretation that Plaintiff's mental health treatment was sparse and her MSEs were entirely normal. This is error because both factual premises are inaccurate – Plaintiff's post-file-review

19

mental health treatment included not just medication but also biweekly therapy sessions with a licensed social worker, which is not "sparse," as well as that this provider's MSE observations consistently included abnormal findings. The ALJ also erred regarding these mental impairments at the RFC phase by relying on the non-examining mental health experts who opined that Plaintiff's mental impairments are merely mild; these experts did not see the post-file-review abnormal MSE findings, which unquestionably undermine the weight that may be afforded to their opinions. Thus, the ALJ's decision is tainted because it breaches the well-settled proposition that medical findings may not constitute substantial evidence if rendered by a source who was not privy to evidence that would materially detract from the force of the findings. See Jonathan G., 2022 WL 17580663, at *6.

Flawed for similar reasons is the ALJ's rejection as not persuasive Dr. Cerbo's opinion that Plaintiff's task persistence is adversely impacted by low frustration tolerance due to depression and anxiety, as well as that frustration will lead her to socially isolate. See Tr. 33, 678, 683. As reasons, the ALJ relies on this opinion's inconsistency "with treatment notes, which show normal [MSEs]." Tr. 33. This reason is inaccurate in that the post-file-review treating record both corroborates the Cerbo opinion of workplace-based frustration and contains consistently abnormal MSEs. See Tr. 678 (therapist's clinical notes reference "ongoing . . . frustration" and difficulty coping during failed work attempt; MSE abnormalities include slowed, soft speech and depressed, sad mood); Tr. 683-84 (therapist's clinical notes reference "frequently getting frustrated at work and that the people at work are often asking her to complete tasks that are outside of her job description"; MSE observation of "[d]epressed, [s]ad" mood"); Tr. 691-92 (therapist's clinical notes reference "ongoing depression . . . due to having recently lost her job"; MSE abnormalities include soft, slowed speech, flat affect and depressed, sad mood); see Tr. 334

(employer letter states that Plaintiff's work attempt failed due to her inconsistency in maintaining a work schedule attributable to "circumstances outside of [her] control," as well as that her resignation was accepted "with deep regret").

Based on the foregoing, I find that the ALJ's Step Two determinations regarding these two impairments lack the support of substantial evidence. On remand, I recommend that there be further analysis of the degree to which Plaintiff's migraines, depression and anxiety impact her ability to work. I make this recommendation aware that, as the Commissioner correctly argues, a Step Two error is generally considered harmless if, as in this case, it is not case ending because the ALJ's analysis of the total impact of all symptoms continues to the RFC phase. See Jones v. Astrue, No. 1:10-cv-179-JAW, 2011 WL 1253891, at *6-7 (D. Me. Mar. 30, 2011), adopted, 2011 WL 1481313 (D. Me. Apr. 19, 2011). Mindful of the serious errors that tainted the RFC phase in this case, I nevertheless recommend remand for further consideration of the limiting impact of Plaintiff's headaches, particularly the potentially work-impacting migraine phenomena (e.g., light sensitivity) clinically confirmed by the otolaryngologist, and of Plaintiff's depression, anxiety and resulting low frustration tolerance as noted by the mental health therapist and the consulting psychologist (Dr. Cerbo).

## C.    Step Five Errors

At Step Five, the Commissioner has the burden of proof. Plaintiff has properly challenged the ALJ's reliance on the VE's testimony, which was based on a hypothetical that included the limit of "occasional" – not "frequent" – handling. As the ALJ's decision makes clear, he did not shift his RFC from "occasional" to "frequent" until after the hearing, when he reviewed the post-hearing submissions. Tr. 34. Further, this switch is based on his improper lay interpretation of records that, to this judicial officer, appear to support and be consistent with the

"occasional" limitation.  Id. at 32, 34-35.  Thus, this is a case where the operative hypothetical transgresses the well-settled proposition that in order for a VE's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.  Arocho v. Sec'y of Health & Hum. Servs., 670 F.2d 374, 375-76 (1st Cir. 1982).  While the Commissioner correctly contends that such an error is generally treated as harmless, Reyes v. Colvin, Civil Action No. 12-30163-KPN, 2013 WL 5508285, at *5-6 (D. Mass. Sept. 30, 2013), there is no need for the Court to strain to make that finding.  With remand required on the other issues, I also recommend a full do-over at Step Five.

In considering the scope of the remand regarding Step Five issues, I also rely on a Step Five matter not specifically raised by Plaintiff.  See Stephen A. v. O'Malley, C.A. No. 24-cv-124-JJM-PAS, 2024 WL 4542148, at *2 n.1 (D.R.I. Oct. 22, 2024) ("Upon encountering errors that the plaintiff did not raise, this Court may raise such errors sua sponte.").  That is, the most significant of the jobs proffered by the VE, and relied on by the ALJ, is school bus monitor, which the Dictionary of Occupational Titles ("DOT") classifies as having over 10,000 jobs available nationally.[10]  Tr. 34, 74-75.  In a case like this one – on the cusp of disability – reliance on this job is troubling and appears to be tainted by error.  Thus, as this Court has previously held, the proposition that the job of "school bus monitor" is a position with few functional requirements is an obsolete DOT artifact, which ignores that, in the present, a school bus monitor must be able to climb stairs constantly and to stoop (bend).  See Audrey P. v. Saul, C.A. No. 20-92MSM, 2021 WL 76751, at *12 & n.9 (D.R.I. Jan. 8, 2021), adopted, 2021 WL 309233 (D.R.I.

---

[10]Also troubling, because the job may well be obsolete or far more limited in available positions, is the ALJ's reliance on "children's attendant, 349.677-018," which is defined by the DOT as a theater employer who "monitors the behavior of unaccompanied children in children's section of theater to maintain order."  See Children's Attendant, U.S. Dep't of Lab., DOT (4th ed., rev. 1991) § 349.677-018, 1991 WL 672889.

Jan. 29, 2021) (job of school bus monitor requires going up and down bus stairs at each stop and stooping (bending) deeply to look under bus at each stop). With an RFC that includes the ALJ's finding that Plaintiff can only occasionally climb stairs and stoop/bend, Plaintiff appears to be precluded from doing this job. Therefore, I find that the ALJ's reliance on the VE's testimony at Step Five is error requiring remand for this additional reason.

## V.    <u>Conclusion</u>

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) be DENIED. Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. <u>See</u> <u>Brenner v. Williams-Sonoma, Inc.</u>, 867 F.3d 294, 297 n.7 (1st Cir. 2017); <u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir. 2016).

<u>/s/ Patricia A. Sullivan</u>
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 14, 2025